IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-CV-00008 |
| | ) | |
| vs. | ) | |
| | ) | |
| US FED GROUP, LLC, also known as | ) | **[Filed Under Seal]** |
| "United States Fed Group, LLC Treasury | ) | |
| Department," also known as "US FED | ) | |
| Treasury Department," also known as | ) | |
| "United States FED Group," also known | ) | |
| as "US Fed Group," also known as | ) | |
| "United States FED Group," also known | ) | |
| as "United States FED Group | ) | |
| Consortium Syndicate," also known as | ) | |
| "US FED Group Business Solutions," | ) | |
| TRADE-BACKED EQUITY LLC, | ) | |
| and ALEX ST. JAMES RAILEY CISCO, | ) | |
| also known as "Alex St. James," | ) | |
| also known as "William Sir Knight Alex- | ) | |
| St. James," | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, United States of America, by and through the undersigned Assistant United States Attorney, alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action pursuant to 18 U.S.C. § 1345, for a temporary restraining order, preliminary and permanent injunctions and other equitable relief, to enjoin defendants and their agents and entities from further violating 18 U.S.C. § 1343 (Wire Fraud), and to further enjoin the alienation and

disposition of property or assets derived from the commission of the offenses or of equivalent value for the purpose of preventing a continuing and substantial injury to the victim of such offense.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 18 U.S.C. § 1345.

3. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is the United States.

5. The Defendants are US FED GROUP, LLC, also known as "United States Fed Group, LLC Treasury Department," also known as "US FED Treasury Department," also known as "United States FED Group," also known as "US Fed Group," also known as "United States FED Group," also known as "United States FED Group Consortium Syndicate," also known as "US FED Group Business Solutions" (USFG), and ALEX ST. JAMES RAILEY CISCO, also known as "Alex St. James," also known as "William Sir Knight Alex-St. James" (St. James). Upon information and belief, defendants USFG and St. James are based in the area of Washington, District of Columbia.

6. Defendants and others are involved in an ongoing scheme to defraud others out of funds and assets. Defendants have engaged in wire fraud by making false and fraudulent pretenses, representations, and promises to induce Retrac, Inc. d/b/a Think Safe a/k/a Think Safe, Inc. (Think Safe) by its corporate officer and

financial institution to wire no less than $2,432,250 from Think Safe's financial institution in Manchester, Delaware County, Iowa, within the Northern District of Iowa, to a lawyer in Florida who posed as an escrow agent for the fraudulent transaction and then to authorize another wire of such funds from the Florida lawyer's attorney trust account to USFG's financial institution in the District of Columbia. Think Safe is headquartered in Cedar Rapids, Linn County, Iowa, within the Northern District of Iowa. Therefore, the fraudulent activities complained of herein have been, and continue to be, conducted within the Northern District of Iowa.

## **FRAUD INJUNCTION STATUTE**

7. The Fraud Injunction Statute, 18 U.S.C. § 1345, authorizes the Attorney General to file a civil action to enjoin three types of activity: (1) mail, wire, and other fraud prescribed in 18 U.S.C. Pt. I, Ch. 63, as well as false claims, false statements, and conspiracy under 18 U.S.C. §§ 287, 371, and 1001; (2) banking law violations as defined in 18 U.S.C. § 3322(d); and (3) federal health care offenses. 18 U.S.C. § 1345(a)(1).

8. "Banking Law Violations" as defined in 18 U.S.C. § 3322(d) includes violations and conspiracies to violate 18 U.S.C. §§ 1341 and 1343 relating to mail and wire fraud, and 18 U.S.C. § 1957 relating to money laundering.

9. In the case of banking law violations, the Fraud Injunction Statute also authorizes Attorney General to commence a civil action in federal court

if a person is alienating or disposing of property, or intends to alienate or dispose of property obtained as a result of, or which is traceable to, a banking law violation.

10. Also, in the case of banking law violations, the relief available to the United States includes: (1) an injunction preventing the alienation or disposition of property obtained as a result of, or which is traceable to, such violation; (2) a restraining order prohibiting any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value; and (3) the appointment of a receiver to administer the restraining order.

11. In the case of a non-banking law violations, the relief available to the United States is a restraining order or injunction of the fraudulent conduct, or such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. 18 U.S.C. § 1345(b).

**BACKGROUND ON THE ONGOING PANDEMIC AND PPE**

12. In December 2019, a novel coronavirus, SARS-CoV-2 (the "coronavirus"), was first detected in Wuhan, Hubei Province of the People's Republic of China ("PRC"), causing outbreaks of the coronavirus disease COVID-19 that has since spread globally. On January 31, 2020, the Secretary of Health and Human Services ("HHS") declared a national public health emergency under 42 U.S.C. §247d as a result of the spread of COVID-19 to and within the United States. On March 11, 2020, the Director-General of the World Health Organization ("WHO") characterized COVID-19 as a pandemic. On March 13, 2020, the President of the

United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United States.

13. According to the Centers for Disease Control and Prevention ("CDC"), current data suggest person-to-person transmission most commonly happens during close exposure to a person infected with the virus that causes COVID-19, primarily via respiratory droplets produced when the infected person speaks, coughs, or sneezes. Droplets can land in the mouths, noses, or eyes of people who are nearby or possibly be inhaled into the lungs of those within close proximity.

14. Accordingly, CDC has issued guidance to health care providers recommending that they wear personal protective equipment ("PPE") to prevent the coronavirus from being transmitted by infected patients to healthcare providers. This PPE includes N95 filtering facepiece respirators or masks.

15. As COVID-19 spread across the United States, it threatened to overwhelm hospitals and healthcare providers who are required to care for rapidly increasing numbers of seriously ill patients with a rapidly dwindling stock of PPE and other necessary health and medical resources. Accordingly, on March 18, 2020, the President of the United States issued Executive Order 13909, *see* 85 Fed. Reg. 16, 227, invoking the powers vested in the President by Defense Production Act of 1950, 50 U.S.C. §4501 *et seq*. (the "Act"). The Act authorizes the President to, among other things, "allocate materials, services, and facilities in such manner,

5
Case 1:21-cv-00008-CJW-MAR   Document 1   Filed 01/22/21   Page 5 of 15

upon such conditions, and to such extent as he shall deem necessary or appropriate to promote the national defense." 50 U.S.C. §4511(a)(2).

16. On March 25, 2020, the Secretary of HHS exercised the authority delegated to the Secretary of HHS by the President to prevent the hoarding of health and medical resources to respond to the spread of COVID-19 within the United States. On March 30, 2020, the Secretary of HHS published a notice, 85 Fed. Reg. 17592, effective March 25, 2020, designating "N-95 Filtering Facepiece Respirators" under the Act as scarce materials or materials the supply of which would be threatened by accumulation in excess of reasonable demands of business, personal, or home consumption, or for the purpose of resale at prices in excess of prevailing market prices.

17. Despite these efforts, the news media has regularly reported on the widespread shortages of PPE and other healthcare and medical supplies needed to respond to the spread of COVID-19. In addition, the news media has reported that the serious shortage of N95 masks has prompted brokers to approach hospitals, medical supply companies, and healthcare providers claiming to be able to obtain supplies of N95 masks far in excess of the prices that prevailed in the market before COVID-19 began to spread widely in the United States.

## THE FRAUDULENT SCHEME

18. Retrac, Inc. d/b/a Think Safe a/k/a Think Safe, Inc. (Think Safe) manufactures and develops first-aid products, software, and training. Think Safe is

headquartered in Cedar Rapids, Linn County, Iowa, within the Northern District of Iowa.

19. On or about October 16, 2020, Think Safe contracted with Datta Holdings, LLC a/k/a Datta Holdings, Inc. (Datta Holdings) for the purchase and delivery of one million 3M N95 1860 Particulate Respirator Masks (3M N95 masks). Various intermediaries and agents in Canada and Florida purported to introduce Think Safe and Datta Holdings to contract and facilitate the purchase and delivery of one million 3M N95 masks.

20. Datta Holdings represented to Think Safe in the contract that the 3M N95 masks were "3M original equipment manufacture (OEM), via a Production Agreement between [Datta Holdings] and 3M supplied by a United States of America government trade association." The contract followed an "Irrevocable Corporate Purchase Order," dated October 9, 2020, by Think Safe to Datta Holdings, which was "*contingent upon source / private seller being an official 3M master dealer.*" (Emphasis in original.)

21. Datta Holdings by its agents represented to Think Safe that its supplier of the 3M N95 masks was US Fed Group, LLC a/k/a US FED Treasury Department a/k/a United States FED Group a/k/a US Fed Group ak/a/ United States FED Group a/k/a United States FED Group Consortium Syndicate a/k/a US FED Group Business Solutions (USFG). Datta Holdings purported to have had entered into an "Irrevocable Corporate Purchase Order" with USFG in August 2020,

pursuant to which USFG had agreed to supply up to 500 million 3M N95 masks upon receipt of funding for the 3M N95 masks' production.

22. For example, by purported letter dated August 5, 2020, USFG's General Partner, David Huang, represented to Datta Holdings in a "letter of attestation" that USFG had "secured a production allocation with 3M of up to 500 million units of OEM respirators, valid until 2021," but "[p]roduction is based on a prefunded draw-down account, meaning the allocution is only manufactured upon payment to 3M by [USFG]." Huang concluded in the letter of attestation, "we welcome any demand side partners with the ability to fund production and contribute to helping the supply chain during this national crisis."

23. On or about October 19, 2020, in anticipation of receiving the one million 3M N95 masks within 72 to 96 hours from USFG, and at the direction of Datta Holdings, Think Safe caused its financial institution to wire $3,025,000 from its bank account at Manchester, Delaware County, Iowa, within the Northern District of Iowa, to a bank account in Clearwater, Florida. A Florida lawyer ("the Florida Lawyer") controlled the Florida bank account and purported to both represent Datta Holdings in the transaction and also act as an "escrow agent" or "paymaster" for the transaction between Think Safe and Datta Holdings under an escrow agreement.

24. On or about October 23, 2020, the Florida Lawyer wired $2,432,250 of the $3,025,000 to an account ending in 6727 that USFG holds at Citibank in Washington, District of Columbia. Think Safe, Datta Holdings, and the Florida

Lawyer signed an amendment to the escrow agreement that authorized the Florida Lawyer to wire $2,432,250 to USFG upon the representation that the wire transfer "allows for sourcing" the one million 3M N95 masks in Think Safe's contract with Datta Holdings. Attached to the amendment was a purported letter of attestation from Individual-1, "Legal Trade Counsel for the United States FED Group," which promised that "all funds transferred to the US FED Treasury Account from [the escrow account] will remain the funds of [Datta Holdings], until drawdown is completed upon receipt of satisfactory and verified shipping and delivery information in relation to 3M 1860 respirators." After wiring $2,432,250 to USFG, the Florida Lawyer held the remaining $592,750 in escrow for a time.

25. Think Safe and Datta Holdings did not receive any 3M N95 masks. USFG did not provide any masks to Think Safe or Datta Holdings pursuant to the corporate purchase order, and USFG did not return any of the $2,432,250 to the Florida Lawyer, despite demands to do so.

26. On or about November 16, 2020, the Florida Lawyer wrote Think Safe an email that stated in part:

> Currently, I am holding $592,750 in my trust account, as a result of the amendment dated October 23, 2020 that transferred $2,432,250 of the Escrowed Funds to U.S. Fed Group. I understand there may be a dispute between the parties regarding whether there has been validation of the product. When there are disputes like this, it is in the best interest of both parties to agree on a resolution. . . . Should the solution be to wire back the Escrowed Funds that I am now holding on behalf of Think Safe, I will first send you a hold harmless agreement.

27. On or about November 27, 2020, the Florida Lawyer wired $592,750 to Think Safe.

# THE CITIBANK ACCOUNTS

28. On October 23, 2020, an account ending in 6727 at Citibank in Washington, DC, entitled "United States Fed Group, LLC Treasury Department," received a wire from the Florida Lawyer in the amount of $2,432,250. Approximately 17 days later, on November 10, 2020, $2,000,000 was transferred from USFG's account ending in 6727 to an account ending in 5183 in the name, "Trade-Backed Equity LLC" (TBE). On December 21, 2020, an additional $395,000 was transferred from USFG's 6727 account to TBE's 5183 account.

29. As of January 11, 2021, the balance of TBE's 5183 account is $2,398,045.43. USFG's account ending in 6727 has a negative balance of $132,001.18, but a linked money market account has a positive balance of $201,016.51.

30. Alex St. James Railey Cisco (also known as Alex St. James a/k/a William Sir Knight Alex-St. James) (St. James) is the listed sole owner of TBE's 5183 account and USFG's 6727 account, as well as other accounts at Citibank. The Bank has placed a temporary hold on St. James's accounts due to concerns that the account holder has engaged in fraudulent activity. Citibank is in the process of closing the accounts.

31. To date, Think Safe has not received any 3M N95 masks and has not received the return of the $2,432,250 that the Florida Lawyer wired to USFG. Further, the $2,432,250 was to be sent on for the production of 1 million 3M N95 masks and not to be deposited into an account of St. James. Datta Holdings has

10
Case 1:21-cv-00008-CJW-MAR   Document 1   Filed 01/22/21   Page 10 of 15

provided Think Safe with email correspondence with 3M, dated December 2, 2020, in which a 3M representative purportedly states that "US FED Group LLC is not a 3M authorized distributor of 3M respirators." Datta Holdings has also encouraged Think Safe to pursue civil and criminal action against USFG, predicting that St. James "will end up serving prison time" because, "[f]or a first time offender, and with this dollar amount, he will end up serving somewhere between 33 and 41 months as per the federal sentencing guidelines."

32. On January 19, 2021, a 3M representative confirmed to the Federal Bureau of Investigation that USFG is not an authorized 3M distributor.

## FIRST CAUSE OF ACTION
## INJUNCTION AGAINST VIOLATIONS UNDER 18 U.S.C. § 1345(a)(1)

33. Plaintiff reasserts and realleges each and every allegation contained in paragraphs 1 through 32 as set forth herein.

34. Pursuant to 18 U.S.C. § 1345(a)(1), upon a showing that defendants are violating or about to violate 18 U.S.C. § 1343 (wire fraud) affecting a financial institution, the United States is entitled to an order enjoining all future fraudulent conduct.

35. Defendants' conduct as described herein, constitutes violations of 18 U.S.C. § 1343 (wire fraud). Defendants have violated, and, upon information and belief, are about to violate these statutes:

    A. Wire Fraud (18 USC § 1343): As described herein and incorporated through FBI Special Agent Kent G. Moore's attached Declaration,

defendants have engaged in a scheme or artifice to defraud others out of their assets by having others transfer their assets to defendant USFG's account at a financial institution that defendant St. James controls. St. James then transfers the funds to another corporation's account that he controls at the same financial institution. Upon information and belief, the financial institutions used to transfer the funds from various banks in this case are financial institutions as defined at 18 U.S.C. § 20. Defendants used and caused to be used wires to further the fraudulent scheme, including but not limited to wires between financial institutions in the Northern District of Iowa, Florida, and the District of Columbia, as well as wires associated with online banking transfers within a single financial institution. Defendant used these wires to further the fraudulent scheme with the specific intent to deceive or defraud. These violations are either ongoing or are reasonably likely to resume and the money will likely be dissipated if not restrained.

36. By violating 18 U.S.C. § 1343, the defendants have committed violations within the meaning of the Fraud Injunction Statutes, 18 USC § 1345.

37. Such violations are ongoing and/or are threatened to continue unless enjoined.

38. The United States is entitled to an order pursuant to 18 U.S.C. § 1345(a)(1) permanently enjoining defendants, their agents and others from

conducting financial transactions related to her fraudulent scheme, including but not limited to the transfer of any remaining funds from defendant St. James's Citibank account in the name of TBE.

## SECOND CAUSE OF ACTION
## INJUNCTION AGAINST DISPOSING OF FUNDS
## UNDER 18 U.S.C. § 1345(A)(2)

39. Plaintiff reasserts and realleges each and every allegation contained in paragraphs 1 through 32 as set forth herein.

40. Defendants received substantial funds as a result of their fraudulent conduct as described herein.

41. Upon information and belief, defendants are in the process of transferring, removing, dissipating, and disposing of these funds, including transferring funds to accounts in the name of another company.

42. Pursuant to 18 USC § 1345(a)(2), if defendants are alienating or disposing of property obtained as a result of violation of 18 USC § 1343 (Wire Fraud), the United States is entitled to an order enjoining such alienation or disposition, or an order prohibiting defendants from withdrawing, transferring, removing, dissipating or disposing of such property or property of equivalent value.

43. The United States is entitled to an order pursuant to 18 U.S.C. § 1345(a)(2) enjoining defendants and their agents from removing property obtained as a result of their fraudulent conduct, and freezing defendants' assets obtained as a result of the fraud.

# DEMAND FOR RELIEF

THEREFORE, the United States request pursuant to 18 U.S.C. § 1345, that the Court:

1. Permanently enjoins defendants, their agents (including financial institutions such as Citibank, and other entities having possession or control of their assets) from

    a. Engaging in any activities relating to their ongoing scheme to defraud others;

    b. From using their accounts to transfer funds or obtain funds to and from others by false or fraudulent representations;

    c. From accepting, transferring, alienating, encumbering, and/or disposing of, or otherwise taking any action with respect to monies received from the fraudulent scheme;

    d. From withdrawing or transferring any money or sums presently held in the Citibank accounts.

For further such relief as the Court may deem just and proper.

Respectfully submitted,

PETER E. DEEGAN, JR.
UNITED STATES ATTORNEY

By: */s/ Timothy L. Vavricek*

TIMOTHY L. VAVRICEK
Assistant United States Attorney
111 Seventh Ave SE, Box 1

Cedar Rapids, IA 52401
319-363-6333
319-363-1990 (Fax)
Tim.Vavricek@usdoj.gov