IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALEX ST. JAMES RAILEY CISCO,<br>a/k/a "Alex St. James," "William Sir Knight Alex-St. James,"<br><br>Defendant. | No. 21-CV-8-CJW-KEM<br><br>**ORDER** |

_____

## I. INTRODUCTION

This matter is before the Court on plaintiff's motion for summary judgment. (Doc. 147). Plaintiff filed the motion on February 24, 2022. Defendant did not file a timely response. On March 29, 2022, the Court entered an order requiring defendant to show cause for why the Court should not grant plaintiff's motion due to defendant's failure to respond, giving defendant 14 days to respond to the Court's order. (Doc. 149). On April 19, 2022, defendant filed an untimely motion for extension of time to respond to plaintiff's motion and seeking a stay of proceedings, asking for an extension of 90 to 180 days to respond. (Doc. 150). On April 20, 2022, the Court granted in part and denied in part defendant's motion. The Court granted defendant a 21-day extension of time to respond to plaintiff's motion for summary judgment and denied defendant's motion to stay proceedings. (Doc. 151). Despite the extension of time, defendant failed to file a response.

For the following reasons, the Court **grants** plaintiff's motion for summary judgment.

## II. BACKGROUND AND RELEVANT PRIOR PROCEEDINGS

On January 22, 2021, plaintiff United States of America filed a complaint for injunctive relief against defendants US FED Group, LLC ("USFG"), Trade-Backed Equity, LLC ("TBE"), and Alex St. James Railey Cisco ("defendant") (collectively, "defendants") under Title 18, United States Code, Section 1345, the Fraud Injunction Statute. (Doc. 1). Plaintiff alleged defendants committed wire fraud, in violation of Title 18, United States Code, Section 1343, by inducing Retrac, Inc. d/b/a Think Safe, Inc. ("Think Safe") to wire more than $2 million to defendants under the fraudulent pretense that defendants would supply Think Safe with personal protective equipment ("PPE"), specifically 3M masks. On February 16, 2021, plaintiff filed an amended complaint further alleging that defendants committed money laundering in violation of Title 18, United States Code, Sections 1956 and 1957. (Doc. 23).

With its complaint, plaintiff filed a motion requesting an *ex parte* temporary restraining order and preliminary injunctive relief. (Doc. 2). On the same date, the Court granted the motion to the extent plaintiff requested temporary injunctive relief pending a hearing on its motion for a preliminary injunction. (Doc. 3). The Court scheduled a hearing for February 9, 2021, for defendants to show cause why the temporary restraining order should not remain in place pending a hearing on plaintiff's motion for a preliminary injunction or a trial on the merits. (Doc. 3, at 3).

On February 9, 2021, the Court held the show cause hearing. (Doc. 21). Plaintiff and Intervenor appeared through counsel. Even though all three defendants had been served or waived service (*see* Docs. 5, 6, 13, 15), no defendant or attorney for a defendant entered an appearance, appeared at the hearing, or filed any pleading. (Doc. 21). Thus, under Federal Rule of Civil Procedure 65(b), the Court extended the Temporary Restraining Order pending a decision on plaintiff's request for a preliminary injunction and set a hearing on that request for March 2 and 3, 2021. (Doc. 22). On

2

February 23, 2021, the Court entered a written order memorializing its decision to extend the temporary restraining order through the Court's entry of an order ruling on plaintiff's request for a preliminary injunction. (Doc. 28).

On March 2, 2021, the Court held the hearing on plaintiff's request for a preliminary injunction. (Doc. 39). Plaintiff and Intervenor Think Safe appeared through counsel. (*Id.*). Again, even though all defendants had been served or waived service *(see* Docs. 25, 26, 27), no defendant or attorney for defendant appeared at the hearing.

On March 18, 2021, the Court entered a preliminary injunction. (Doc. 48).

On May 7, 2021, the Court entered default judgment on behalf of plaintiff against defendants USFG and TBE. (Doc. 88).

### III. DEFENDANT'S FAILURE TO COMPLY

Typically, courts generally rule on motions for summary judgment on the merits, even when a party has failed to respond to a motion. *See, e.g.*, *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1213 (8th Cir. 1997) ("When a motion would be dispositive of the merits of the cause if granted, courts should normally not treat a failure to respond to the motion as conclusive."); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) (determining whether summary judgment was appropriate on the merits despite plaintiff's failure to respond to defendant's summary judgment motion). Indeed, Federal Rule of Civil Procedure 56(e) contemplates the possibility a party may fail to respond to another party's assertion of facts in a motion for summary judgment. When that happens, a court may consider the fact undisputed or may "grant summary judgment if . . . the movant is entitled to it[.]" FED. R. CIV. P. 56(e). Thus, under this scenario, the court must still determine whether summary judgment is appropriate regardless of whether the adverse party failed to respond. *United States v. One Parcel of Real Prop.*, 27 F.3d 327, 329 n.1 (8th Cir. 1994).

On the other hand, defendant's pro se status does not entitle him to disregard the Federal Rules of Civil Procedure. *Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002). Pro se litigants also must comply with court rules and directives. *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005). Here, defendant failed to timely respond to plaintiff's statement of material facts. Local Rule 56(c) provides that "[i]f no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court." LR 56(c). Despite that, the Court gave defendant advanced notice by ordering him to show cause for why the Court should not grant the motion because defendant failed to respond. (Doc. 149). Defendant then failed to timely respond to the Court's order. When the Court granted defendant an extension of time to respond to the government's order (Doc. 151), he still failed to do so.

Thus, the Court grants plaintiff's motion for summary judgment based on defendant's failure to timely resist, even when granted an extension of time to do so.

Nevertheless, the Court will, out of an abundance of caution, consider the merits of plaintiff's motion for summary judgment. The Court will first summarize the uncontested facts, then apply the law of summary judgment to those facts. Doing so, the Court finds summary judgment is proper on the merits as well.

### IV. FACTUAL BACKGROUND

On or about October 16, 2020, Think Safe contracted with Datta Holdings, LLC a/k/a Datta Holdings, Inc. ("Datta Holdings") for the purchase and delivery of one million 3M 1860 Particulate Respirator Masks ("3M masks"). (Doc. 148, at 3–4, ¶¶ 4, 5; 6-18; 36, ¶ 12). Think Safe manufactures and develops first-aid products, software, and training and is headquartered in Cedar Rapids, Linn County, Iowa. (*Id.*, at 3, ¶ 3). At the time, 3M masks were in high demand due to the COVID-19 pandemic. (*Id.*, at 34-36, ¶¶ 4-10). As demand for 3M masks increased due to the pandemic, distribution of the masks was limited only to authorized 3M distributors. (*Id.*, at 36, ¶ 11). Datta

4

Case 1:21-cv-00008-CJW-KEM   Document 152   Filed 05/12/22   Page 4 of 16

Holdings, through its agents, represented to Think Safe that its supplier of 3M masks was USFG. (*Id.*, at, ¶¶ 6, 7; 36-37, ¶ 14). In turn, USFG, through its agent David Huang, represented to Datta Holdings that "[USFG] has secured a production allocation with 3M of up to 500 million units of OEM respirators, valid until 2021 . . .," but that production was based on a prefunded draw-down account, meaning the masks would only be manufactured upon payment to 3M by USFG. (*Id.*, at 4, ¶¶ 8-10; 19; 37, ¶ 15). Despite these representations, USFG was not an authorized distributor of 3M masks. (*Id.*, at 26, ¶ 4; 39, ¶ 19; 70, ¶ 33).[1]

On October 19, 2020, in anticipation of receiving one million 3M masks within 72 to 96 hours from USFG, Think Safe caused its financial institution to wire $3,025,000 from its bank account at Manchester, Delaware County, Iowa, to a bank account in Clearwater, Florida controlled by an attorney purporting to function as an escrow agent (the "Florida Lawyer"). (*Id.*, at 4, ¶ 11; 37-38, ¶ 16).

On October 23, 2020, the Florida Lawyer wired $2,432,250 of the $3,025,000 to an account ending in 6727 that USFG held and of which defendant was sole owner at Citibank in Washington, District of Columbia (the "6727 Account"). (*Id.*, at 26, ¶ 2, 28, ¶ 13; 38, ¶ 17; 40-41, ¶¶ 23, 25, 27; 54; 60; 69, ¶ 30). Think Safe transferred the

---

[1] The United States' First Set of Requests for Admission (the "Requests") were served by certified mail on defendant at his last known address on file with the Court on September 24, 2021, and were delivered to that address on September 27, 2021. (Doc. 148, at 21, ¶¶ 3-5; 32-33). A courtesy copy of the Requests was also sent to defendant by plaintiff's attorney via e-mail on that same date. (*Id.*, at 82, ¶ 4). Defendant's responses were due within 30 days of service. FED. R. CIV. P. 36(a)(3). Defendant has not responded to the Requests, requested an extension of time, or communicated with plaintiff's counsel since entry of this Court's Scheduling Order. (*Id.*, at 82-83, ¶ 5). Defendant's failure to respond constitutes an admission of each request and may be cited in support of the motion for summary judgment. FED. R. CIV. P. 36(a)(3); *see also Quasius v. Schwan Food Co.*, 596 F.3d 947, 950-51 (8th Cir. 2010) (holding that under FED. R. CIV. P. 36(a)(3), "A matter is admitted" unless the responding party answers or objects within thirty days, and "[i]f facts that are admitted under Rule 36 are 'dispositive' of the case, then it is proper for the district court to grant summary judgment.") (cleaned up).

$2,432,250 as a result of USFG's false representation that it was a distributor of 3M masks. (*Id.*, at 5, ¶ 12; 28, ¶ 14). At the time of the transfer, defendant knew the transfer was for the purpose of purchasing 3M masks and that USFG and/or TBE had falsely represented to Think Safe they were authorized distributors of 3M masks. (*Id.*, at 28, ¶¶ 15-16). Think Safe and Datta Holdings did not receive any 3M masks, USFG did not provide any masks to Think Safe or Datta Holdings under the corporate purchase order, and USFG did not return any of the $2,432,250 to the Florida Lawyer despite demands to do so. (*Id.*, at 5, ¶ 13; 29, ¶ 19; 39, ¶ 18).[2] Defendant also knew that neither he, USFG, nor TBE were able to fulfill Think Safe's order for 3M masks. (*Id.*, at 29, ¶ 20).

On November 10, 2020, defendant transferred $2 million from the 6727 Account to another Citibank account, this time ending in 5183 (the "5183 Account"), without Think Safe's knowledge and for the purpose of concealing the source of these fraudulently obtained funds. (*Id.*, at 28, ¶ 17; 40, ¶ 25; 61).

On December 21, 2020, defendant transferred an additional $395,000 from the 6727 Account to the 5183 Account without Think Safe's knowledge and for the purpose of concealing the source of these fraudulently obtained funds. (*Id.*, at 29, ¶ 18; 40, ¶ 25; 64).

Think Safe was not defendant's only victim. On September 25, 2020, USFG received $258,750 from Guilbert Tex into the 6727 Account, also for the purchase of 3M masks. (*Id.*, at 29, ¶¶ 21-22; 57; 74-77, ¶¶ 10-24). As with Think Safe, Guilbert Tex transferred the funds as a result of USFG's false representation it was a distributor of 3M masks, a fact of which defendant was aware. (*Id.*, at 29, ¶¶ 21-22; 30, ¶ 24; 57; 74-77, ¶¶ 10-24). As with Think Safe, at the time of the transfer from Guilbert Tex, defendant

---

[2] The Florida Lawyer held the remaining $592,750 in escrow for a time before returning that amount to Think Safe.

knew the transfer was for the purpose of purchasing 3M masks and that USFG and/or TBE had falsely represented to Guilbert Tex they were authorized distributors of 3M masks. (*Id.*, at 29, ¶ 23; 30, ¶ 24). Defendant also knew that neither he, USFG, nor TBE were able to fulfill Guilbert Tex's order for 3M masks. (*Id.*, at 30, ¶ 27). On October 2, 2020, defendant transferred $200,000 from the 6727 Account to a second account, a Citibank account ending in 0407 (the "0407 Account") for the purpose of concealing the source of those fraudulently obtained funds. (*Id.*, at 30, ¶ 25; 40-41, ¶¶ 26, 29; 58; 66). Of course, as with Think Safe, Guilbert Tex never received the 3M masks. (*Id.*, at 30, ¶ 26; 79, ¶ 35).

At all times relevant to this matter, neither USFG, TBE, nor defendant were authorized distributors of 3M masks, a fact defendant then well knew. (*Id.*, at 26-27, ¶¶ 4-8; 39, ¶ 19; 70, ¶ 33). Defendant knew that he, USFG, and TBE were unable and would be unable to fulfill any order for 3M masks. (*Id.*, at 27, ¶¶ 11-12). In addition, defendant was the sole owner of the 6727, 5183, and 0407 Accounts during the times of the transactions herein described. (*Id.*, at 26, ¶¶ 1-3; 39-41,¶¶ 22, 23, and 27; 43).

## V.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, a "party

may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88; *see also Reed v. City of St.*

8

Case 1:21-cv-00008-CJW-KEM    Document 152    Filed 05/12/22    Page 8 of 16

*Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

If the burden of persuasion at trial would be on the *nonmoving* party, then the party moving for summary judgment may satisfy Rule 56's burden of production in two ways, either by submitting affirmative evidence negating an essential element of the claim, or by demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of their claim. *Bedford v. Doe*, 880 F.3d 993, 996–97 (8th Cir. 2018). If the moving party seeks summary judgment on lack of evidence, then the moving party must affirmatively show the absence of evidence. *Hanson v. FDIC*, 13 F.3d 1247, 1253 (8th Cir. 1994). If the moving party does not satisfy this showing, however, then its motion for summary judgment must be denied, and the Court need not consider whether the nonmoving party has met its ultimate burden of persuasion. *Id.* Here, plaintiff is the moving party in its motion for summary judgment. Defendant, the nonmoving party, bears the burden of persuasion at trial.

## VI.  DISCUSSION

The Fraud Injunction Statute, Title 18, United States Code, Section 1345, was enacted in 1984 "'to allow the Attorney General to put a speedy end to a fraud scheme by seeking an injunction in federal district court' as soon as the requisite evidence is secured." *United States v. Am. Heart Rsch. Found., Inc.*, 996 F.2d 7, 11 (1st Cir. 1993) (quoting S. REP. NO. 225, 98th Cong., 2d Sess., at 402 (1984), reprinted in U.S. Code Cong. & Admin. News 3182, 3549). In 1990, Congress amended Section 1345 "to enhance the United States' ability to prevent banking-law violations and the wrongful disposition of assets after such violations have occurred." *United States v. Brown*, 988 F.2d. 658, 662 (6th Cir. 1993). Title 18, United States Code, Section 3322(d) defines a banking law violation to include wire fraud under Section 1343 (when affecting a financial institution) and money laundering under Sections 1956 and 1957. 18 U.S.C. § 3322(d).

> The Fraud Injunction Statute provides in pertinent part:
>
> (2) If a person is alienating or disposing of property, or intends to alienate or dispose of property, obtained as a result of a banking law violation (as defined in § 3322(d) of this title) or a Federal health care offense or property which is traceable to such violation, the Attorney General may commence a civil action in any Federal court--
> > (A) to enjoin such alienation or disposition of property; or
> > (B) for a restraining order to--
> > > (i) prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value; and
> > > (ii) appoint a temporary receiver to administer such restraining order.

18 U.S.C. § 1345(a)(2). Thus, the Fraud Injunction Statute permits the United States to seek relief enjoining persons who have committed fraud offenses from committing further fraud offenses and from alienating or otherwise disposing of property either obtained from such a violation or which is traceable to such a violation. 18 U.S.C. § 1345(a)(2);

*United States v. Payment Processing Center, LLC*, 435 F. Supp. 2d 462, 466 (E.D. Pa. 2006).

### A. Burden of Proof

Plaintiff first has the burden of proving that defendants committed a fraud. Courts interpreting Section 1345, however, have applied various standards of proof to determine whether a defendant committed a predicate offense and whether that burden of proof applies to all phases of a Section 1345 action. *See, e.g.*, *United States v. Ritchie Special Credit Inv., Ltd.*, 620 F.3d 824, 836 (8th Cir. 2010) (observing that "federal courts are split on the proper standard . . . and [the 8th Circuit] has yet to decide its standard"); *United States v. Barnes*, 912 F. Supp. 1187, 1194 (N.D. Iowa 1996) (applying preponderance of the evidence standard).

Here, the Court need not decide which standard applies because the evidence warrants injunctive relief under the preponderance of the evidence and any lower burden of proof.

### B. Evidence of Wire Fraud and Money Laundering

The undisputed material facts show that defendants, in perpetuating their fraudulent scheme against Think Safe and Guilbert Tex, committed wire fraud and money laundering.

A claim of wire fraud under Title 18, United States Code, Section 1343 has three elements: (1) intent to defraud; (2) participation in a scheme to defraud; and (3) the use of a wire in furtherance of a fraudulent scheme. *United States v. US FED Grp.*, LLC, No. 21-cv-8 CJW-KEM, 2021 WL 5035036, at *2 (N.D. Iowa May 7, 2021) (citing *United States v. Rice*, 699 F.3d 1043, 1048 (8th Cir. 2012)). Here, the undisputed facts show defendant, and his corporations through which he acted, committed wire fraud by intentionally causing to be wired, and receiving funds via wire, that he knew were sent to purchase 3M masks that he never intended to supply. Defendant knew that neither he,

11

USFG, nor TBE were authorized distributors of 3M masks and were incapable of fulfilling orders for 3M masks. Defendant nevertheless knowingly caused to be wired and received the funds, via wire, that he knew were for the purpose of purchasing 3M masks. Defendant made these transfers after agents acting on behalf of USFG and TBE falsely represented that they were authorized 3M mask distributors. As a result of the fraud scheme, defendants' victims never received the product for which they had paid defendant, nor did they receive refunds. Instead, defendant transferred the wire fraud proceeds to other accounts within his control, further demonstrating his fraudulent intent. As a result, the undisputed facts show that defendant's actions constitute wire fraud in violation of Title 18, United States Code, Section 1343.

> Money laundering in violation of 18 U.S.C. § 1956 consists of four elements:
>
> (1) defendant conducted, or attempted to conduct, a financial transaction which in any way or degree affected interstate commerce or foreign commerce; (2) the financial transaction involved proceeds of [a specified] illegal activity[, such as Wire Fraud in violation of 18 U.S.C. § 1343]; (3) defendant knew the property represented proceeds of some form of unlawful activity; and (4) defendant conducted or attempted to conduct the financial transaction knowing the transaction was "designed in whole or in part [ ] to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity."

*United States v. Anwar*, 880 F.3d 958, 968 (8th Cir. 2018) (alteration in original) (quoting *United States v. Dvorak*, 617 F.3d 1017, 1021–22 (8th Cir. 2010)); *see also* 18 U.S.C. § 1956(a)(1). Money laundering in violation of Title 18, United States Code, Section 1957 merely requires a showing that: (1) the defendant knowingly engaged in a monetary transaction; (2) the defendant knew the property involved derived from specified unlawful activity, such as Wire Fraud in violation of Title 18, United States Code, Section 1343; and (3) the property was of a value greater than $10,000. *United States v. Johnson*, 450 F.3d 366, 375 (8th Cir. 2006).

12

Here, defendant's conduct violated both Section 1956 and Section 1957, as he transferred funds he knew were proceeds of fraudulent activity in amounts greater than $10,000, and did so to conceal the nature, source, and location of those funds. Defendant conducted these transactions despite knowing he was not entitled to those funds. The source of the funds involved in the transactions at issue in the District of Columbia came from California and Iowa and, as such, affected interstate commerce.

As a result, the uncontested facts show by a preponderance of the evidence, and any lesser evidentiary standard that may apply, that defendant's conduct constituted wire fraud and money laundering.

### C. *The Threat of Irreparable Harm*

When, as here, plaintiff has proven commission of the underlying fraud, "[i]rreparable harm need not be demonstrated because so long as the statutory conditions are met, irreparable harm to the public is presumed." *United States v. Quadro Corp.*, 928 F. Supp. 688, 697 (E.D. Tex. Apr. 22, 1996). Even absent this presumption, the evidence shows both a sufficient threat of irreparable harm and that permanent relief is "warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." 18 U.S.C. § 1345(b). Defendant used a global pandemic as a pretext to defraud entities trying to purchase life-saving PPE worth millions of dollars. Defendant then concealed the proceeds of his fraudulent scheme through money transfers to and between his various bank accounts, thus depriving these entities of the funds necessary to bring lifesaving PPE to the general public. Indeed, defendant has used his bank accounts to wire significant sums of money overseas and to other accounts, and, in TBE's account opening documents, he represented he anticipated frequently wiring funds overseas to various countries around the world. Absent plaintiff's action against defendants, it is probable that Think Safe's and Guilbert Tex's payments to USFG would have been permanently

13

lost. As noted above, the funds were never returned, even when requested, and but for the Court's order granting preliminary injunctive relief, the fraud proceeds would likely have continued to be transferred and concealed. A permanent injunction prohibiting defendants from engaging in fraud and transferring fraud proceeds is the only way to limit their ability to further conceal funds or to profit from his fraudulent scheme, protecting not only Think Safe and Guilbert Tex, but also any other past or future victims.

### D. *The Balance of Harms*

As this Court has previously found in the context of the preliminary injunction against defendant and the permanent injunctions against his companies, the balancing of the equities weighs heavily in favor of a permanent injunction. If injunctive relief is denied, there is great risk defendant will continue to defraud, launder, and dissipate assets belonging to the victims of his fraudulent scheme. As the undisputed material facts have shown, defendant knowingly transferred funds for the purpose of concealing their source.

It stands to reason that further harm would come to the victims or others if defendant were to regain control of the bank accounts in dispute or if the funds Citibank has deposited in the Court registry were returned to him. Although freezing assets may ordinarily cause a hardship to account holders, here the funds in dispute were obtained by means of fraud and were never legitimately held by defendant, greatly diminishing any arguable harm he suffered. Defendant has not, and cannot, come forward with evidence showing entitlement to the funds at issue. In contrast, the risk of harm to the victims, who have been cumulatively defrauded of over $2.7 million, is substantial, particularly given defendant's past transfers and dissipation of these fraudulently obtained funds.

### E. *Public Interest, Protection Against Future Harm*

Plaintiff seeks relief in the public interest by requesting a permanent injunction that would prohibit defendant from engaging in criminal, fraudulent conduct, or from

exercising control of monies or accounts used as part of his fraudulent scheme. *See United States v. Fang*, 937 F. Supp. 1186, 1199 (D. Md. Sept. 12, 1996) ("[O]nce the undesirable conduct is established, it is fair to conclude that the public interest will be served if appropriate injunctive relief is granted."). Plaintiff brought this action in the public interest and not on behalf of any private party. A permanent injunction would further serve the public interest by acting as a public deterrent to similar activities and by promoting public faith in the PPE procurement process.

## VII. CONCLUSION

The Court **grants** plaintiff's motion for summary judgment. (Doc. 147). The Court grants the motion because defendant failed to file a timely response. Alternatively, the Court grants plaintiff's motion on the merits. Thus, the Court **grants** plaintiff's request for permanent injunctive relief against defendant.

Final judgment shall enter in favor of plaintiff and against all defendants. The Clerk of Court is directed to close the case, but the Court will retain jurisdiction over ancillary matters including, but not limited to, enforcement of the permanent injunction order and the discovery, restraint, disgorgement, collection, and return of fraud and laundered funds including funds presently or formerly maintained in the 5183 Account, the 0407 Account, the 6727 Account, or other accounts presently or formerly controlled by defendant, his agents (including family members, financial institutions, and other entities having possession or control of defendant's assets), brokers, attorneys, and entities owned or controlled by defendant, and all those in active concert or participation with defendant (including financial institutions such as Citibank, and other entities having control of his assets). *See, e.g.*, *United States v. Bors*, No. 21-9441, 2021 WL 5909196, at *3 (D.N.J. Dec. 13, 2021) (retaining jurisdiction in Section 1345 matter "for the purpose of enforcing or modifying this Order and for the purpose of granting such additional relief as may be necessary or appropriate[.]"); *United States v. Dinh*, No.

8:20-cv-1794, 2021 WL 5867441, at *8 (M.D. Fla. Dec. 10, 2021) (same).

    **IT IS SO ORDERED** this 12th day of May, 2022.

                                                           _____
                                                           C.J. Williams
                                                           United States District Judge
                                                           Northern District of Iowa